IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DAVID GARCIA,

    Plaintiff,

v.                                                                                     No. CIV 12-265 LFG/KBM

BERNALILLO COUNTY SERGEANT
ESCALANTE and BERNALILLO
COUNTY SHERIFF'S OFFICER, R. GARCIA,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendants' Escalante and Garcia ("Defendants") Amended Motion for Summary Judgment, filed January 22, 2013. [Doc. 49.] After considering the pertinent law and the parties' pleadings, with exhibits [Docs. 60, 61], the Court concludes that the amended motion should be granted and that Plaintiff David Garcia's ("Plaintiff") complaint should be dismissed, with prejudice.

**Background**

Plaintiff filed this § 1983 action, alleging violations of his civil rights under the Fourth and Fourteenth Amendment to the United States Constitution for unreasonable seizure/arrest, excessive force, retaliation for exercising First Amendment right of freedom of speech, and a claim of "prosecution without probable cause." Plaintiff also claims Defendants are not immune to Constitutional claims for damages. Defendants deny Plaintiff's claims as to both liability and damages, and seek qualified immunity. [Doc. 19 (Joint Status Report), at 1.]

On February 6, 2012, Plaintiff filed this lawsuit in state court. [Doc. 1, exhibit.] On March 13, 2012, Defendants removed the case to federal district court. [Doc. 1.] On May 14, 2012, Plaintiff filed an amended complaint, as permitted by the Court [Doc. 14], naming only Defendants Escalante and R. Garcia. [Doc. 16.] Originally named Defendant McCauley was dismissed. [Doc. 20.]

Discovery in this case, after granting the parties an extension, closed on January 21, 2013. [Docs. 22, 35.] The case proceeded to a settlement conference but did not settle. [Doc. 36.] On December 4, 2012, Defendants filed a motion for summary judgment that was fully briefed. [Docs. 38, 41, 45.] Defendants asserted, *inter alia*, that they were entitled to qualified immunity. [Doc. 38.]

On December 20, 2012, Magistrate Judge Karen B. Molzen issued an Order granting Defendants' motion to stay proceedings pending this Court's ruling on the summary judgment motion and also granting Defendants' motion for protective order. [Doc. 44.]

On January 14, 2013, the Court denied Defendants' summary judgment motion without prejudice, finding the motion was deficient as it relied entirely on the pleadings, arguments, and contentions of counsel. [Doc. 47, at 3.] The Court's Order permitted Defendants to file a corrected motion within the current February 11, 2013 motion filing deadline. [Id.]

On January 22, 2013, Defendants filed the present amended summary judgment motion. [Doc. 49.] On January 28, 2013, Plaintiff filed a motion to compel deposition of party and responses for requests for production. [Doc. 50.] Magistrate Judge Molzen generally denied the motion to compel, noting that discovery was stayed pending a ruling on Defendants' summary judgment motion. Judge Molzen also observed that Defendants were allowed to file an amended summary judgment motion until the February 11, 2013 motion filing deadline. [Doc. 55, at 1.] Judge Molzen rejected Plaintiff's position that this Court's earlier denial of the first summary judgment served to lift the discovery stay. [Doc. 55, at 1-2.]

2

In the Order denying Plaintiff's motion to compel, Judge Molzen also examined Plaintiff's Rule 56(d) affidavit seeking limited discovery in the form of deposing Defendant Garcia. The Court noted that the information Plaintiff sought from such a deposition was irrelevant to the qualified immunity analysis. Judge Molzen further concluded that Plaintiff failed to explain why he was unable to present facts necessary to rebut summary judgment through other means, including affidavit testimony of other witnesses such as himself or his mother. [Doc. 55, at 2.] Indeed, the extended discovery period ended on January 21, 2013, and Plaintiff offered to explanation why he did not pursue the requested discovery earlier. No stay of discovery was imposed prior to December 20, 2012. Judge Molzen denied Plaintiff's request for limited discovery.

## Amended Motion for Summary Judgment

I. LEGAL STANDARD

Summary judgment provides courts with a means by which "factually insufficient claims or defenses can be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). Rule 56(a) requires the court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2012). The party seeking summary judgment has an initial burden to show that there is an absence of evidence to support the non-moving party's case. See Kannady v. City of Kiowa, 590 F.3d 1161, 1168-1169 (10th Cir. 2010) ("moving party has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.") (internal quotation marks removed).

Upon meeting that burden, the non-moving party must identify specific facts that show the existence of a genuine issue of material fact. Id. The non-moving party may not rest upon mere

conjecture, allegations, or denials, nor may a party rely solely on argument or contentions. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). *See* Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 834 (10th Cir. 1986) ("Conclusory allegations, general denials, or mere argument of an opposing party's case cannot be utilized to avoid summary judgment.") (citation omitted). *See also* Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010) ("in response to a properly supported motion for summary judgment, a non-movant must produce sufficient evidence for a reasonable trier of fact to find in its favor at trial on the claim or defense under consideration").

The Court further observes that the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original). Stated differently, "the movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." Kannady, 590 F.3d at 1169 (citation omitted). *See also* Celotex, 477 U.S. at 323 (Rule 56 standard requires the court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element to prove that party's case, and on which that party will bear the burden of proof at trial.")

As recently explained by the federal Utah District Court, in Wilcox v. Career Step, LLC, __ F. Supp. 2d __, 2013 WL 839936, at *4 (D. Utah Mar. 6, 2013) – ,

> . . . . now as before the 2010 amendments to Rule 56, the court must perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. "When applying this standard, we examine the factual record in the light most favorable to the party

opposing summary judgment." Kannady, 590 F.3d at 1168 (*quoting* Belhomme v. Widnall, 127 F.3d 1214, 1216 (10th Cir. 1997)).

Thus, while the Court examines the factual record in the light most favorable to Plaintiff, mere assertions, conjecture, or the existence of a scintilla of evidence in support of his position will not demonstrate a genuine issue of material fact for trial. Carpenter v. Boeing Co., 456 F.3d 1183, 1192 (10th Cir. 2006) (citations and quotations omitted).

II.   DISCUSSION

   A.   Preliminary Matters

The Court sets out *infra* the undisputed material facts noted in Defendants' opening brief and supported by affidavit testimony. While Plaintiff attempts to contradict Defendants' undisputed material facts by setting forth a section entitled "Concise Statement of Genuinely Disputed Material Facts," [Doc. 60, at 7], Plaintiff's "statement" is neither concise nor in accordance with the Court's local rules. For example, the local rules require the response to set out each fact in dispute, number the facts, and refer "with particularity to those portions of the record upon which the non-movant relies, and [] state the number of the movant's fact that is disputed." D.N.M. LR-Civ. 56-1(b). The local rule further states that all material facts set forth in the memorandum will be deemed undisputed unless specifically controverted. Id. The rule contemplates that the responding party may set out additional facts that it contends are material. However, in doing so, the non-movant must identify its additional facts with letters and refer, again, with particularity, to supporting portions of the record. Id.

Here, Plaintiff provided no list of numbered facts that it contends are disputed. Instead, Plaintiff responded with lengthy and rambling arguments in page-long paragraphs. [*See* Doc. 60, at pp. 7-14.] Plaintiff states he "strongly disputes all Defendants' statement of undisputed facts, Nos.

5

1-5." Plaintiff begins by attempting to dispute Fact No. 3, citing some deposition testimony (attached to Plaintiff's response to the original summary judgment motion, but not to his present response), but primarily cites legal authority.

Plaintiff is free to present legal argument and authority in response to a summary judgment motion, but should first identify each material fact he disputes by number and provide concise citations to the record that support an alleged dispute. He must submit competent, admissible evidence in support of every factual statement on which he relies. *See* Tran v. Sonic Indus. Servs., Inc., 490 F. App'x 115, 118 (10th Cir. July 19, 2012) (unpublished) (unsupported conclusory allegations do not create a fact issues; to oppose summary judgment, plaintiffs "must do more than provide their subjective interpretation of the evidence, they must marshal admissible evidence of material fact") (citations omitted). In his response, Plaintiff argues why other undisputed facts may be disputed, sometimes properly referring to record evidence, but typically citing only legal authority instead of depositions or affidavit testimony, or relying on argument and Plaintiff's "strong" assertions or beliefs. This is insufficient. Mere argument and contention cannot carry the day.

Generally, Plaintiff's response is deficient. However, the Court examines the factual record, when identified by Plaintiff, in the light most favorable to him.

    B.    Undisputed Material Facts ("UMF")

        1.    UMF No. 1:

On March 18, 2009, Plaintiff entered the Bernalillo County Second Judicial District Courthouse ("State Court"). Deputy Garcia ("Defendant Garcia") was working security at the time Plaintiff sought entry into State Court. Defendant Garcia observed Plaintiff with a metal vial

attached to Plaintiff's key chain. [UMF No. 1.] Defendants supported these facts with Defendant Garcia's Affidavit. [Doc. 49, Ex. 1.]

Plaintiff does not dispute these facts, other than to cite his deposition testimony, wherein he stated that he had three vials rather than just one on the day in question. The fact that Plaintiff had three vials rather than one is immaterial for purposes of this motion. In addition, Plaintiff does not contest that he entered State Court on March 18, 2009, other than to explain that he went to State Court to "explore how to file a civil rights lawsuit, . . . regarding the alleged trauma to his head and alleged police brutality later detailed in [a separate federal lawsuit filed by Plaintiff against Albuquerque police officers]. . . ." [Doc. 60, at 3-4] (unsupported by any affidavit or deposition testimony). The separate federal lawsuit and the injuries Plaintiff alleges he suffered, in relation to the underlying facts of that earlier lawsuit, are immaterial to this motion.

The court concludes that UMF No. 1 is undisputed.

    2.    UMF No. 2:

The State Court enacted Local Rule LR2-108(B) that provides that "all persons entering and all packages, briefcases, bags and containers brought into [State Court] . . . shall be subject to search by x-ray or other screening method." Therefore, in accord with the State Court's local rule intended to provide safety to court officials and the public, Defendant Garcia examined Plaintiff's metal vial and discovered 14 pills inside. Defendant Garcia noted that some of the pills in the vial were hydrocodone,[1] a controlled substances under the New Mexico Controlled Substances Act, NMSA 1978, § 30-31-1, *et seq.* Hydrocodone is also a Schedule III drug under the federal Controlled Substances Act. 21 U.S.C. § 812.

---

[1]Hydrocodone is in a group of drugs called narcotic pain relievers used to relieve moderate to severe pain. http://www.drugs.com/hydrocodone.html (3/28/13).

Plaintiff admits that Defendant Garcia located hydrocodone pills in Plaintiff's vial as alleged. However, Plaintiff cites his deposition transcript as evidence that three vials were found, not just one, and that the pills "were his prescription medication hydrocodone." [Doc. 60, at 5.] Plaintiff argues, without any citation to record evidence, that Defendant interrogated him and asked why he was in the State Court, to which Plaintiff supposedly explained he was there to file a civil lawsuit against law enforcement officers. Most of Plaintiff's attempts to dispute portions of UMF No. 2 are insufficient argument and mere assertions. Moreover, even if supported by record evidence, the allegations are immaterial and do not dispute UMF No. 2. For example, the critical issue is not the number of vials, but whether Plaintiff possessed a controlled substance.

The Court concludes that UMF No. 2 is undisputed.

        3.      UMF No. 3:

Plaintiff did not have a valid prescription for hydrocodone in his possession at the time he attempted to enter State Court. Therefore, Plaintiff was arrested and transported to the Metropolitan Detention Center. Defendants support these undisputed facts with Defendant Garcia's affidavit. [Doc. 49, Garcia Affidavit.]

Plaintiff attempts to dispute this fact by stating that both he and his mother affirm that Plaintiff had a prescription for hydrocodone, and that the pills were derived from a legal source. "Escorted by Lt. McCauley, Ms. Cecilia Garcia went outside to her car and brought back [Plaintiff's] prescriptions, including a prescription for hydrocodone. Cecilia Garcia told the officer that he needed to give her son back his medication, and that [Plaintiff] could have a panic attack without them." [Doc. 60, at 6.] There is no affidavit statement from Plaintiff's mother in support of these assertions, and a party may not rely on hearsay. *See* Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) ("[h]earsay testimony that would be inadmissable at trial

cannot be used to defeat a motion for summary judgment"). Plaintiff's unsupported assertions do not create a genuine issue for trial and fail to dispute UMF No. 3. Moreover, Plaintiff does not contest that he was arrested and charged with possession of a controlled substance and felony charges. [Doc. 60, at 6.]

The Court concludes that UMF No. 3 is undisputed.

    4.    UMF No. 4:

During discovery, Plaintiff produced a photograph of a vial label of an old prescription he had for hydrocodone. The information on the label indicated that the prescription was given to Plaintiff 14 months prior to his contact with Defendant Garcia on March 18, 2009. The vial with an old prescription was not given to Defendant Garcia on the date of Plaintiff's arrest. Even if Defendant Garcia was provided with that prescription information when he encountered Plaintiff on March 18, 2009, Defendant Garcia would not have considered the prescription to have been valid as it was over six months old. In support, Defendants cite Defendant Garcia's Affidavit, a photograph of the pill vial's label with the date of 1/16/08, and 21 U.S.C. § 829(b) (prescriptions for schedule III controlled substances may not be filled or refilled more than 6 months after the date thereof).

While Plaintiff argues that he or his mother provided an officer with Plaintiff's prescription for hydrocodone, as noted above, there is no supporting evidence by way of affidavit testimony. Plaintiff cites the following deposition testimony with respect to defense counsel's questions of Plaintiff regarding the photograph of the pill vial.

    Plaintiff's Counsel :    Object to form, foundation. I'm not sure, are you asking him whether or not the pills contained in this photograph of this – entered here are the same pills as these? Are you asking him whether or not he provided this prescription to Officer Garcia?

> Defense Counsel: I'm asking him whether he provided this prescription to Officer Garcia.
>
> Plaintiff: This exact label? Or – I have a label that I did provide that looks very similar. I did not provide a bottle. I did provide a label, a label that had this exact same information on it. Maybe not the exact date, but, you know, the date proves – actually, it must have been – Well, no, it wasn't from this date. And it was from this date; and then even after this incident, I was still prescribed hydrocodone.

[Doc. 60, at 7 (*citing* Garcia Dep., at 99:2-18, attached as Ex. E to Plaintiff's response [Doc. 41] to original summary judgment motion.] Plaintiff's deposition testimony fails to confirm that he had a valid, current prescription for the hydrocodone he was carrying on March 18, 2009. If anything, Plaintiff's deposition testimony confirms that he did not provide evidence to Defendants of a current prescription. Nor did Plaintiff provide an affidavit statement from a physician or pharmacist demonstrating he had a current, valid prescription for hydrocodone as of March 18, 2009.

Plaintiff argues that his "sworn deposition" would be confirmed by Cecilia Garcia during "live testimony at trial." [Doc. 60, at 7.] Again, there is no supporting affidavit by Cecilia Garcia. Plaintiff's supposition about trial testimony is insufficient. *See, e.g.,* Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988) ("In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.' ") Stated differently, it is not important what evidence may be available at trial, but whether a party can support facts, at the summary judgment stage, with admissible evidence to demonstrate a triable issue requiring a trial be held. *See, e.g.,* Shannon v. Graves, 257 F.3d 1164, 1167 (10th Cir. 2001) (noting that it is well established that "[t]he Seventh Amendment [right to a jury trial in civil cases] is not violated by proper entry of summary judgment, because such a ruling means that no triable issue exists to be submitted to a jury").

The Court concludes that UMF No. 4 is undisputed.

      5.      UMF No. 5:

During discovery, Plaintiff produced a prescription history he obtained from Walgreens. There is no valid, current prescription for hydrocodone in the prescription history. Defendants support this fact with Defendant Garcia's affidavit statement and a copy of the prescription history produced to Defendants. [Doc. 49, Defendant Garcia Aff. and Ex. B to Aff.]

Plaintiff argues that the "simple review of a *small excerpt* of the Walgreens prescription history for David Garcia" does not demonstrate Plaintiff failed to have a valid, current prescription. [Doc. 60, at 12.] Plaintiff cites an exhibit he attached to his motion to compel [Doc. 50] that does not constitute competent, admissible evidence. It is merely a statement of what discovery Plaintiff sought to pursue, but as noted above, his request to compel discovery was denied.[2] More specifically, Plaintiff failed, at this stage, to present evidence of a valid, current prescription.

Plaintiff argues that he "strongly asserts he and his mother provided Defendants a similar prescription at the scene, which was disposed of by Defendants, while other selected prescriptions were tagged into evidence." [Doc. 60, at 12.] Plaintiff's argument and mere assertions do not constitute evidence for purposes of raising genuine issues of material fact in response to a summary judgment motion. No admissible evidence was submitted to support Plaintiff's contentions.

The Court concludes that UMF No. 5 is undisputed.

---

[2] Moreover, this is not a case where the parties did not engage in discovery before the qualified immunity motion was filed. The parties served written discovery on one another before the first motion for summary judgment was filed. [*See, e.g.,* Docs. 25, 26, 29-33.] Plaintiff's deposition was taken in November 2012. [Doc. 41, Ex. E.] While Plaintiff sought to take Defendant's deposition near the close of discovery, there is no explanation why he did not depose Defendants or other witnesses earlier during discovery before the summary judgment motion was filed.

The Court additionally observes that while Plaintiff initially stated that he "strongly disputes all Defendants' statement of undisputed facts, Nos. 1-5," [Doc. 60, at 7], he changed positions by the end of his brief. In the conclusion, Plaintiff stated as "outlined supra, there are two genuine, material disputes of fact between the parties, for which trial is necessary." [Doc. 60, at 15.] The Court cannot ascertain which two facts Plaintiff believes he successfully contested or what evidence created a material dispute sufficient for trial. More importantly, the Court finds that Plaintiff failed to dispute any of the five material facts presented by Defendants.

    C.    QUALIFIED IMMUNITY

The defense of qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.' " Roybal v. City of Albuquerque, No. 08–0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009) (unpublished) (*quoting* Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Qualified immunity protects government employees from suit, except those who are "plainly incompetent or those who knowingly violate the law." Lewis v. Tripp, 604 F.3d 1221, 1225 (10th Cir . 2010) (quotation omitted).

The qualified immunity analysis involves determining whether the government official's conduct "violat[ed] clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818.

> When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden." Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). The plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory

12

> rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity. *See* Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009)).

Wilson v. Jara, 866 F. Supp. 2d 1270, 1288 (D.N.M. 2011), *aff'd by*, 2013 WL 923192 (10th Cir. Mar. 12, 2013).

The Court determines whether the facts, taken in the light most favorable to Plaintiff, show that the officer's conduct violated a constitutional right. If the officer's conduct did not violate a constitutional right, the inquiry ends, and the officer is entitled to qualified immunity. Wilder v. Turner, 490 F.3d 810, 818 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008). The Court may determine which order to address the two-prong inquiry. *See* Pearson v. Callahan, 555 U.S. 223, 236 (2009) (allowing courts discretion to decide in which order to address the two parts of the qualified immunity inquiry).

In Wilson, the New Mexico District Court further explained:

> In evaluating whether the right was clearly established, the court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he did violated that right. A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned." "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." On the other hand, [] it is generally not necessary to find a controlling decision declaring the "very action in question ... unlawful." "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' "

Wilson, 866 F. Supp. 2d at 1289 (internal citations omitted).

Here, the Court elects to address whether Plaintiff showed that Defendants violated a constitutional right.

### 1. Unlawful Search and Seizure Claims

Plaintiff asserts that Defendants conducted an unreasonable search and seizure in violation of his Fourth Amendment rights. [Doc. 16, Count I, ¶¶ 13-18.][3] Defendants argue that both claims fail. The State Court enacted a local rules that allows for a security officer to inspect a person's bags and containers upon entering the courthouse. This fact is undisputed. Thus, Plaintiff's Fourth Amendment rights were not violated when Defendants searched the vial containing medications upon Plaintiff's entry into the State Court building. Because Plaintiff presented no facts to support a Fourth Amendment unlawful search claim, Defendants are entitled to qualified immunity on this claim.

The same is true for a Fourth Amendment seizure claim. A warrantless arrest by a law enforcement officer is reasonable under the Fourth Amendment where probable cause exists for the officer to believe that a criminal offense was committed or is being committed. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested." United States v. Alonso, 790 F.2d 1489, 1496 (10th Cir. 1986).

---

[3]Plaintiff's First Amended Complaint asserts a claim of unreasonable search and seizure [Doc. 16]; but, his brief in response to the amended summary judgment motion primarily argues that Plaintiff was maliciously prosecuted without probable cause or arrested without probable cause. Indeed, Plaintiff's brief does not discuss any facts supporting the alleged unreasonable search and seizure claim, and it may be that Plaintiff abandoned that claim. [*See* Doc. 60, at 4, 8, 9, 14 (arguing probable cause for the arrest).]

Here, the facts are undisputed. Defendants had properly searched Plaintiff and discovered that he possessed a controlled substance without a valid prescription for the medication. Thus, Defendants were aware of facts sufficient to warrant a person of reasonable caution to believe that an offense was committed. *See* NMSA 1978 § 30-31-1, *et seq.*, and 21 U.S.C. § 812. Even if mistaken, a reasonable officer would have believed there was probable cause to arrest in that situation based on the totality of the circumstances. *See* United States v. Valenzuela, 365 F.3d 892, 897 (10th Cir. 2004) (court does not look at officer's subjective beliefs; the inquiry is an objective one concerning what a reasonable officer would believe under the circumstances). *See also* Fogarty v. Gallegos, 523 F.3d 1147, 1156 (10th Cir. 2008) ("an officer's own subjective reason for the arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime.") Moreover, Plaintiff's unsupported argument that Defendants arrested him because of a grudge against him is unavailing. Even if true, Defendants' subjective reasons for the arrest are irrelevant. Id.

Because Plaintiff failed to come forward with facts showing that Defendant lacked probable cause to seize Plaintiff, Defendants are entitled to qualified immunity on the unlawful seizure claim.

2.  Prosecution without Probable Cause Claim

Plaintiff's complaint asserts this claim against Defendant Garcia, arguing that when Defendant Garcia "prosecuted Plaintiff with a felony, he knew he lacked probable cause." [Doc. 16, ¶ 20.] Plaintiff contends that Defendant Garcia caused Plaintiff to be charged with a crime when he lacked probable cause for the charges, and that the "prosecution was irregular due to the lack of probable cause." [Doc. 16, ¶¶ 20-23.]

Here, Plaintiff's claim is unclear and this count overlaps with his allegations concerning an arrest without probable cause. After all, while Defendant Garcia arrested Plaintiff, he was not a prosecutor. Prosecutorial decisions are ultimately the responsible of the district attorney. *See*

Barham v. Town of Greybull Wyo., 483 F. App'x 506, 509 (10th Cir. June 5, 2012) (unpublished) (defendant officers could not be held liable for constitutional violations in relation to prosecutorial decisions as the plaintiff did not show that defendants exerted any pressure or influence or made any knowing misstatements to the prosecutor; thus, the chain of causation was broken by the prosecutor's decision to file charges). Moreover, ultimately, the district attorney did not prosecute Plaintiff in relation to the charges.

Under New Mexico state tort law, lack of probable cause to initiate criminal proceedings is an essential element of the tort of malicious prosecution. Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996). The Court already determined that Defendants had probable cause for the arrest. Thus, the malicious prosecution claim, such that is, must be dismissed. *See* Graham v. Connor, 490 U.S. 386, 396–97 (1989) (no claim under Fourth Amendment for arrest based on probable cause); Taylor v. Meacham, 82 F.3d 1556, 1560 (10th Cir.) (probable cause is a defense to claim for malicious prosecution), *cert. denied*, 519 U.S. 871 (1996).

### 3. First Amendment Retaliation Claim

In the First Amended Complaint, Plaintiff alleges that he was exercising his First Amendment rights to "nonviolently express his displeasure at being interrupted from attending court, without probable cause." [Doc. 16, ¶ 26.] He further claims that Defendant Escalante lost control of her anger when Plaintiff threatened to file a lawsuit if not released. [Id., ¶ 27.] Plaintiff asserts that his arrest was the result of retaliation for his speech and that Defendants were highly trained officers, who "had a heightened duty to refrain from retaliation and control their anger, even when faced with verbally unruly criminal suspects." [Id., ¶ 33.] It is not entirely clear, but Plaintiff may concede that he was a verbally unruly criminal suspect during his interactions with officers on March 18, 2009.

16

In the briefing, Plaintiff argues that because his arrest was unsupported by probable cause and "done in retaliation," his First Amendment Retaliation claim survives. [Doc. 60, at 15.] Plaintiff failed to present any admissible evidence indicating Defendants knew of Plaintiff's alleged threat to file a lawsuit or that the arrest was in retaliation for the exercise of First Amendment rights. Moreover, the Court already determined that Defendants had probable cause for the arrest.

The Court concludes that the First Amendment Retaliation claim should be dismissed for failure to state a claim.  Additionally, the Court notes the United States Supreme Court's recent holding in Reichle v. Howards, 132 S.Ct. 2088, 2093 (2012), that there is no clearly established First Amendment right to be free from a retaliatory arrest that is supported by probable cause. *See also* Storey v. Taylor, 696 F.3d 987, 997 (10th Cir. 2012) (when arrest is lawful, there is no "but-for causation for a related tort requiring a retaliatory motive").

The undisputed facts demonstrate that Defendants had probable cause for the arrest. Accordingly, Defendants are entitled to qualified immunity on the First Amendment claim.

    4.    <u>Fourth Amendment Failure to Investigate/Failure to Preserve Exculpatory Evidence Claims</u>

Although Plaintiff did not set out a failure to investigate claim in his First Amended Complaint, he argues in his brief that Defendants' alleged failure to conduct an "on-the-record interview with Plaintiff's mother, Cecilia Garcia" violated the Fourth Amendment. In Romero v. Fay, 45 F.3d at 1472, 1476-77 (10th Cir. 1995), the Tenth Circuit Court of Appeals instructed that in order to establish probable cause for a warrantless arrest, officers must "reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all."

Here, the undisputed facts demonstrate, as noted *supra*, that Defendants had probable cause to search and seize Plaintiff based on the discovery that he possessed a controlled substance without a valid, current prescription. Plaintiff's arguments to the contrary and even his deposition testimony do not establish otherwise. The Court concludes that it is uncontested that Defendants had probable cause to make the warrantless arrest. Moreover, their investigation was not constitutionally defective; they were under no obligation to uncover evidence that did not exist. Not even Plaintiff produced such evidence during discovery. Thus, to the extent that Plaintiff raises such a claim, Defendants are entitled to qualified immunity.

Similarly, while not specifically asserted as a claim in the First Amended Complaint, Plaintiff argues that Defendants unreasonably failed or refused to preserve exculpatory evidence. [Doc. 60, at 7.] He argues in his response that both he and his mother observed Defendant Garcia dispose of certain medications in the trash. While Plaintiff provided his own deposition testimony in support of the statement that he observed Defendant Garcia pour Plaintiff's medications into a a cone which Defendant Garcia then "dumped" in the trash [Doc. 41-5, at 104], Plaintiff supplied no affidavit testimony from his mother. Moreover, it is unclear how the medications themselves, even if disposed of, were exculpatory evidence. To the contrary, the presence of hydrocodone, would without a valid prescription, be inculpatory. To the extent that Plaintiff alleges Defendants discarded a valid, current prescription for hydrocodone, Plaintiff provided no supporting evidence to show such a prescription was issued. There is, for example, no affidavit from Plaintiff's doctor showing a valid prescription on March 18, 2009.

The Court concludes that Defendants are entitled to qualified immunity with respect to these two claims as Plaintiff did not present facts demonstrating a constitutional violation. Alternatively, these two claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6), for failure to state a claim.

**Conclusion**

Based on the undisputed material facts and the analysis set out above, the Court concludes that Defendants' Amended Motion for Summary Judgment should be granted, that Defendants are entitled to qualified immunity on all claims, and that Plaintiff's entire complaint and all claims should be dismissed, with prejudice.

Briefly, the Court addresses Plaintiff's own cursory and unsupported request for summary judgment that he included at the end of his response in opposition to the summary judgment motion. [Doc. 60, at 15-16.] Not only does the Court disagree that Plaintiff supplied evidence to support summary judgment in his favor, the request is improperly attached in a response to opposing party's motion. *See* Administrative Order, No. 92-88 (D.N.M. May 4, 1992) (all practitioners must submit a separate pleading for each matter upon which they seek a ruling from the court; pleadings that raise several matters for adjudication in one document are improper). Pursuant to the Court's Administrative Order, Plaintiff could not properly join his own request for summary judgment in his response in opposition to Defendants' motion for summary judgment. Thus, the Court denies Plaintiff's improper and unsupported request for summary judgment.

IT IS THEREFORE ORDERED that Defendants' Amended Motion for Summary Judgment [Doc. 49] is granted with the result that Defendants are entitled to summary judgment on Plaintiff's claims. Accordingly, Plaintiff's First Amended Complaint and all claims are dismissed, with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge