# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

DAVID GARCIA,

       Plaintiff,

v.                                     No. 12-CV-0265 MV/KBM

BERNALILLO COUNTY SERGEANT
ESCALANTE and BERNALILLO COUNTY
SHERRIF'S OFFICER R. GARCIA,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Renewed Motion for Summary Judgment and Qualified Immunity and Memorandum in Support Thereof ("Motion for Summary Judgment"), filed April 17, 2014 [Doc. 86], and Plaintiff's Motion to Defer Ruling on or Deny Defendants' Summary Judgment Motion (Doc. 86) Under Federal Rule of Civil Procedure 56(d) ("Motion to Defer Ruling"), filed April 30, 2014 [Doc. 90].   The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion for Summary Judgment is not well taken and will be denied and the Motion to Defer Ruling is moot and will be denied as moot.

## BACKGROUND

I.     Procedural Background.

Plaintiff David Garcia ("Plaintiff") filed a complaint in the Second Judicial District Court, County of Bernalillo, State of New Mexico, asserting 42 U.S.C. Section 1983 claims for unlawful seizure without probable cause in violation of the Fourth Amendment against Defendants Bernalillo County Sergeant Escalante ("Escalante") and Bernalillo County Sheriff's Officer R.

Garcia ("Garcia"), a 42 U.S.C. Section 1983 claim for prosecution without probable cause in violation of the due process clause of the Fourteenth Amendment against Garcia, and 42 U.S.C. Section 1983 claims for retaliation in violation of the First Amendment against Escalante and Garcia ("Defendants").  [Doc. 1-2].  Defendants removed the case to this Court on March 13, 2012.  [Doc. 1].

The Magistrate Judge, sitting by consent of the parties, *see* 28 U.S.C. § 636(c), granted summary judgment in favor of Defendants on all three Section 1983 claims, ruling that, based on the undisputed facts, Defendants were entitled to qualified immunity because Plaintiff had failed to allege facts that, if true, established a constitutional violation.  [Doc. 63].  Plaintiff appealed. [Doc. 86-1].

The Tenth Circuit affirmed in part and reversed in part.  [*Id.*].  Specifically, the Tenth Circuit affirmed the Magistrate Judge's order granting summary judgment on the First Amendment claims, holding that Plaintiff presented no evidence of a retaliatory motive.[1]  [*Id.* at 3].  The Tenth Circuit, however, reversed the order on the Fourth Amendment claims, holding that Plaintiff had presented sufficient evidence to create a genuine dispute of material fact precluding summary judgment on the question whether Defendants had probable cause to arrest and prosecute Plaintiff.  [*Id.*].  The Tenth Circuit declined to address Defendants' argument that they also were entitled to qualified immunity because the applicable law was not clearly established at the time of Plaintiff's arrest and prosecution, leaving that question for this Court to resolve on remand.  [*Id.* at 8].

Defendants now raise this question in their Motion for Summary Judgment.  Defendants

---

[1]  The Tenth Circuit's decision on appeal is reported at *Garcia v. Escalante*, 551 F. App'x 463 (10th Cir. 2014).

ask the Court to enter judgment in their favor on Plaintiff's Section 1983 Fourth and Fourteenth Amendment claims on the sole ground that they are entitled to qualified immunity because Plaintiff cannot demonstrate that the law was clearly established such that a reasonable officer in their position would have known that arresting and prosecuting Plaintiff violated his constitutional rights.  [Doc. 86 at 1].   Plaintiff did not file a response to Defendants' motion but instead filed his Motion to Defer Ruling, in which he requests, pursuant to Federal Rule of Civil Procedure 56(d), an order from the Court deferring ruling on the Motion for Summary Judgment to allow Plaintiff time to depose Garcia.  [Doc. 90 at 1].   Alternatively, Plaintiff asks the Court summarily to deny the Motion for Summary Judgment.  [*Id.* at 8].

II.   <u>Factual Background</u>.[2]

On March 18, 2009, Plaintiff entered the Bernalillo County Second Judicial District Courthouse.  [Doc. 86 at 5, ¶ 6].   Defendant Garcia was working as a security officer at the time Plaintiff sought entry into the courthouse, and Garcia observed that Plaintiff had in his possession one or more metal vials attached to his key chain.  [*Id.*; Doc. 60 at 5].   Defendant Garcia looked in the metal vial(s) and discovered fourteen pills.  [Doc. 86 at 5, ¶ 6].   Defendant Garcia noted by

---

[2]   Although Plaintiff has not filed a response to the Motion for Summary Judgment, Defendants ask the Court to construe Plaintiff's Motion to Defer Ruling as his response.  [Doc. 97 at 2]. Therefore, consistent with this request, the Court does not deem Defendants' facts uncontroverted, *see Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (explaining that while the failure to file a response to a motion for summary judgment constitutes a waiver of the right to controvert the movant's facts), but rather construes Plaintiff's Motion to Defer Ruling, and the facts referenced therein, as his response to the Motion for Summary Judgment.   While Plaintiff's Motion to Defer Ruling itself contains no statement of facts, it incorporates by reference other papers containing Plaintiff's statement of the facts.   Thus, these facts and the facts set forth in the Motion for Summary Judgment, construed in the light most favorable to Plaintiff as the party opposing summary judgment, form the basis for the Court's summary judgment decision.

size, color and shape that some of those pills in the vial(s) were hydrocodone.[3]   [*Id.*].   Plaintiff

also possessed other controlled substances in the vial(s).   [*Id.* at 11].

Plaintiff's mother, who was with Plaintiff at the time, left the courthouse with one of the

security officers on duty and returned with prescription records for the controlled substances in

Plaintiff's possession.   [*Id.*; Doc. 86-1 at 3].   Defendants dispute that Plaintiff provided them

with a prescription record for hydrocodone, but for purposes of their Motion for Summary only,

they concede this fact.   [Doc. 86 at 5, ¶ 8].   Defendants do not dispute that Plaintiff provided

them with prescription records for the remaining controlled substances in his possession.   [Doc.

41 at 5; Doc. 86 at 11].

Defendant Garcia attests that if Plaintiff had provided him with a prescription record for

hydrocodone, he would not have believed that the prescription was "valid" within the meaning of

Section 30-31-23(A) because the evidence establishes that Plaintiff's prescriptions were dated in

January or February 2008, which was approximately thirteen to fourteen months prior to the date

on which Defendants arrested Plaintiff.[4]   [Doc. 86-3 at 2, ¶ 6].   Defendants do not dispute that the

remaining prescription records Plaintiff presented were valid.   [Doc. 86 at 11 ("Of course, had

Plaintiff produced a *valid* prescription for the Hydrocodone, as was done for some of the other

controlled substances he had in his possession, that would be a different matter.")].

Defendants Garcia and Escalante arrested Plaintiff for being in possession of a controlled

---

[3]   The parties do not dispute that hydrocodone is a controlled substance under the New Mexico
Controlled Substances Act, N.M. Stat. Ann. § 30-31-1 *et seq.*, and a Schedule III drug under the
federal Controlled Substances Act, 21 U.S.C. § 812.   [Doc. 86 at 5, ¶ 7].

[4]   The evidence before the Court establishes that Plaintiff had prescriptions for hydrocodone filled
on January 30, 2008, and on February 6, 2008.   [Doc. 86-3 at 12].   The evidence also indicates
that Plaintiff produced in discovery one photograph of the prescription label on a vial of
hydrocodone dated January 16, 2008.   [*Id.* at 4].

substance without a valid prescription.   [*Id*. at 5, ¶ 8].   Defendant Garcia later filed a criminal complaint charging Plaintiff with unlawful possession of a controlled substance in violation of New Mexico Statutes Annotated Section 30-31-23(A).   [Doc. 9-2].   The charge was dismissed approximately two weeks later.   [Doc. 9 at 5-6].

### STANDARD

Federal Rule of Civil Procedure 56 provides in relevant part that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(c); *accord Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999) (quoting Fed. R. Civ. P. 56(c)).   Under Rule 56(c), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).   Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   *Id*. at 248.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.   *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted).   The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case."   *Celotex v. Catrett*, 477 U.S. 317, 325 (1986).   Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."   *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).

5

The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo v. Neighborhood Health Ctrs., Inc.*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). If the responding party fails properly to address the movant's assertion of fact as required by Rule 56(c), a district court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Upon a motion for summary judgment, a district court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co*., 985 F. Supp. 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).

The standard for analyzing a motion for summary judgment shifts slightly if, as here, a defendant raises qualified immunity as a defense. The qualified immunity defense was created to shield public officials "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). It provides immunity from suit and not merely from liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It therefore spares defendants the burden of going forward with trial. *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) (citation omitted).

Once a moving party raises the defense of qualified immunity, the nonmoving party must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right." *Garramone v.*

*Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also, e.g.*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001).   The Tenth Circuit has held that "'the right [an officer is] alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense:   The contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right.'"   *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)).   The Tenth Circuit further has explained that for a right to be "particularized," there "ordinarily . . . must be a Supreme Court or Tenth Circuit opinion on point" or the "clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."   *Medina v. City & County of Den.*, 960 F.2d 1493, 1498 (10th Cir. 1992) (citation omitted); *accord Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008), *cert. denied*, 556 U.S. 1236 (2009).   "'The plaintiff is not required to show, however, that the very act in question previously was held unlawful in order to establish an absence of qualified immunity.'"   *Id.* (quoting *Cruz v. City of Laramie*, 239 F.3d 1183, 1187 (10th Cir. 2001)).

Moreover, the Supreme Court has emphasized that a district court must define the "right allegedly violated . . . at the appropriate level of specificity before [the] court can determine if it was clearly established."   *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citation omitted); *see Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (explaining that it is inappropriate for a district court to define clearly established law at a high level of generality).   A district court must conclude that the right was clearly established "in light of the specific context of the case, not as a broad general proposition."   *Saucier*, 533 U.S. at 201.   "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."   *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (internal citations omitted); *accord Kerns v. Bader*, 663

F.3d 1173, 1183 (10th Cir. 2011) (quoting *Ashcroft*, 131 S. Ct. at 2084), *cert. denied*, 133 S. Ct. 645 (2012).   The level of generality at which the legal rule is defined is important, because qualified immunity shields officers who have reasonable but mistaken beliefs as to the application of law to facts and operates to protect officers from the sometimes "hazy border[s]" of the law.   *Saucier*, 533 U.S. at 206 (internal quotation marks and citation omitted).   "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."   *Id.* at 202.

The Court has "the freedom to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).   If a nonmoving party fails to satisfy its two-part burden, a court must grant the moving party qualified immunity.   *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).   If the nonmoving party successfully demonstrates the violation of a clearly established constitutional right, the moving party assumes the normal summary judgment burden of demonstrating that no genuine issue of material fact exists that would defeat its claim for qualified immunity.   *See Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993).

## DISCUSSION

In their Motion for Summary Judgment, Defendants Escalante and Garcia ask the Court to grant summary judgment in their favor on the sole ground that they are entitled to qualified immunity from Plaintiff's 42 U.S.C. Section 1983 claims for violation of his Fourth Amendment right to be free from arrest without probable cause and his Fourteenth Amendment right to be free from prosecution without probable cause because the law was not clearly established at the time of

Plaintiff's arrest and prosecution such that a reasonable officer in their position would have known that they were violating Plaintiff's constitutional rights.   [Doc. 86 at 1].   Plaintiff failed to file a response to the Motion for Summary Judgment but instead filed a Motion to Defer Ruling, in which he asks the Court to defer ruling on the Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(d) to allow Plaintiff time to depose Garcia.   [Doc. 90 at 1]. Alternatively, Plaintiff asks the Court summarily to deny Defendants' Motion for Summary Judgment.   [*Id.* at 8].[5]

The Court first addresses the Motion for Summary Judgment and, because it holds that the law was clearly established at the time of Plaintiff's arrest and prosecution such that a reasonable officer in Defendants' position would have known that the conduct in question violated Plaintiff's constitutional rights, it denies Defendants' Motion for Summary Judgment.   Having denied the Motion for Summary Judgment, Plaintiff's Motion to Defer Ruling on the motion for summary judgment is moot and the Court therefore denies the motion as moot.

I.    The Court Denies the Motion for Summary Judgment Because the Law was Clearly Established such that a Reasonable Officer in Defendants' Position would have Known the Conduct at Issue Violated Plaintiff's Rights.

Defendants Escalante and Garcia argue that they are entitled to qualified immunity from Plaintiff's Section 1983 claims for violation of his Fourth Amendment right to be free from arrest without probable cause and his Fourteenth Amendment due process right to be free from

---

[5]   Although Plaintiff has not filed a response to the Motion for Summary Judgment, the Court already has indicated that it construes Plaintiff's Motion to Defer Ruling as a response.   *See supra* note 2.   Moreover, even if the Court did not construe the Motion to Defer Ruling as a response, the Court could not grant Defendants' Motion for Summary Judgment based solely on Plaintiff's failure to respond.   The Tenth Circuit has held that even if a party fails to respond to a motion for summary judgment, a district court can only grant the motion if the movant nonetheless "demonstrates no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."   *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

prosecution without probable cause because the law was not clearly established such that a reasonable officer in their position would have known that the conduct in question violated Plaintiff's rights.   Specifically, Defendants claim "that there is no clearly established law that vitiates probable cause to arrest [or prosecute] someone in possession of a Controlled Substance, when the alleged prescription produced is more than fourteen months old."   [Doc. 86 at 3].

Section 1983 provides civil redress for deprivation of constitutional rights by persons acting under color of state law.  *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1992); 42 U.S.C. § 1983.  "Section 1983 creates no substantive civil rights, but rather only a procedural mechanism for enforcing them."  *Wilson*, 52 F.3d at 1552 (citation omitted); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Thus, "[t]he first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the plaintiff] is charged,"  *Baker v. McCollan*, 443 U.S. 137, 140 (1979), and "[t]he validity of the claim must then be judged by reference to the specific constitutional standard which governs that right,"  *Graham*, 490 U.S. at 394.  The Court therefore looks to substantive Fourth and Fourteenth Amendment law in evaluating whether Defendants are entitled to qualified immunity from Plaintiff's Section 1983 claims.

It is well settled that a warrantless arrest violates the Fourth Amendment if it is conducted without probable cause.  *See Beck v. Ohio*, 379 U.S. 89, 91 (1964); *see also Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).  Thus, a plaintiff seeking to overcome an assertion of qualified immunity and survive summary judgment on a Section 1983 unlawful arrest claim must demonstrate that the defendant arrested the plaintiff without probable cause in violation of clearly established law.  Likewise, a plaintiff seeking to overcome an assertion of qualified immunity from a Section 1983 malicious prosecution claim must demonstrate that the defendant lacked probable cause to conduct the arrest under clearly established law because a lack of probable cause

10

to arrest is one of the elements of a malicious prosecution claim.  *See Wilkins v. De Reyes*, 528 F.3d 790, 799 (10th Cir. 2008), *cert. denied*, 555 U.S. 1212 (2009).

"Probable cause exists where the facts and circumstances known to the officer at the time of arrest, and of which the officer had reasonably trustworthy information, were sufficient to warrant a prudent person in believing defendant had committed or was committing a criminal offense."  *U.S. v. Rodriguez*, 739 F.3d 481, 485 n.2 (10th Cir. 2013).   Probable cause is measured against an objective standard.  *See Beck*, 379 U.S. at 96.  "'Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction.'"  *Rodriguez*, 739 F.3d at 488 (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)). Thus, it "does not require proof beyond reasonable doubt" or "even require the suspect's guilt to be more likely true than false."  *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011) (internal quotation marks omitted).   "Instead, the relevant question is whether a substantial probability existed that the suspect committed the crime," which requires "something more than a bare suspicion."  *Id.* (internal quotation marks omitted).

While federal law dictates whether probable cause exists for an arrest, because Defendants arrested Plaintiff for a state law crime, New Mexico law defines the offense for which Defendants arrested Plaintiff.  *See Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("Whether an officer is authorized to make an arrest ordinarily depends, in the first instance on state law").   Defendants arrested and prosecuted Plaintiff for the crime of possession of a controlled substance, which is criminalized in the New Mexico Controlled Substances Act, N.M. Stat. Ann. § 30-31-23(A). Section 30-31-23(A) of that Act provides in relevant part that "[i]t is unlawful for a person intentionally to possess a controlled substance unless the substance was obtained pursuant to a valid prescription or order of a practitioner while acting in the course of professional practice."

11

N.M. Stat. Ann. § 30-31-23(A).

Defendants have raised the defense of qualified immunity to Plaintiff's unlawful arrest and prosecution claims.  Plaintiff, therefore, must overcome the assertion of qualified immunity by (1) asserting facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrating that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right."  *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted).  The Tenth Circuit, on appeal, already held that Plaintiff has pointed to evidence which, if true, states a constitutional violation. *See Garcia v. Escalante*, 551 F. App'x 463, 467 (10th Cir. 2014).  The Circuit, however, reserved for this Court the question whether Defendants nonetheless are shielded by qualified immunity from Plaintiff's claims because the law was not clearly established such that a reasonable officer in Defendants' position would have known that arresting and prosecuting Plaintiff for unlawful possession of a controlled substance violated Plaintiff's rights.

Under the second prong of the qualified immunity inquiry, even an officer who mistakenly concludes that probable cause is present may be entitled to qualified immunity if the officer acted reasonably.  *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law" and "gives ample room for mistaken judgments").  That qualified immunity shields officers who have "reasonable, but mistaken beliefs" as to the application of law to facts operates to protect officers from the sometimes "hazy border[s]" of the law.  *Saucier v. Katz*, 533 U.S. 194, 205 (2001) (internal quotation marks and citation omitted).  "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* at 202.

In answering the question whether the law was clearly established at the time of Plaintiff's arrest and prosecution, it is of little help for the Court to conclude that at the relevant time it was well established in the Tenth Circuit that an arrest without probable cause violates the Fourth Amendment.   *Cf. Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.") (internal citations omitted); *accord Kerns*, 663 F.3d at 1182-83 (quoting *Ashcroft*, 131 S. Ct. at 2084).   On the other hand, Plaintiff does not cite, and the Court has not found, any specific case in the Tenth Circuit, Supreme Court, or elsewhere which holds that an officer who arrests a suspect for violation of a statue that criminalizes possession of a controlled substance "unless the substance was obtained pursuant to a valid prescription" violates the suspect's Fourth and Fourteenth Amendment rights to be free from arrest and prosecution without probable cause when the suspect presents a prescription dated thirteen to fourteen months prior to the arrest.   Although ordinarily, for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains, *see Medina v. City & County of Den.*, 960 F.2d 1493, 1498 (10th Cir. 1992), the Supreme Court has confirmed that "[a] controlling decision . . . need not declare the "very action in question . . . unlawful," *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   The Tenth Circuit likewise has held that "[a] plaintiff[] need not cite a factually identical case to demonstrate the law was clearly established," and that "[s]ome level of generality is appropriate." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1257 n.9 (10th Cir. 1998) (citing *Clanton v. Cooper*, 129 F.3d 1147, 1156 (10th Cir. 1997)).   The Tenth Circuit further has held that "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing law."   *Kerns*,

663 F.3d at 1187; *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (noting that "general statements of law are not inherently incapable of giving fair and clear warning").  "A plaintiff may therefore carry the burden of demonstrating a right is clearly established by citing cases that have a sufficient degree of factual correspondence to enable a reasonable officer to know that the officer's acts violated the plaintiff's constitutional . . . rights." *Kerns*, 663 F.3d at 1187 (citation omitted).

The Court concludes that there is clearly established law articulated in several Tenth Circuit cases with a sufficient degree of factual correspondence to enable a reasonable officer in Defendants' position to know that arresting and prosecuting Plaintiff for unlawful possession violated Plaintiff's Fourth and Fourteenth Amendment rights.   That the prescription label Plaintiff presented to Defendants was dated thirteen or fourteen months prior to his arrest does not alter the Court's conclusion.   *Cf. id.*

It was clearly established at the time of Plaintiff's arrest and prosecution, under both Supreme Court and Tenth Circuit authority, that an officer, in determining whether he or she has sufficient reasonably trustworthy information to constitute probable cause, must examine all of the facts and circumstances within the officer's knowledge at the time of the arrest, *see Carroll v. U.S.*, 267 U.S. 132, 162 (1925), and determine under the totality of those circumstances whether probable cause exists to conduct the arrest, *see U.S. v. Morgan*, 936 F.2d 1561, 1567-68, 1569 (10th Cir. 1991), *cert. denied*, 502 U.S. 1102 (1992); *U.S. v. Fox*, 902 F.2d 1508, 1513 (10th Cir. 1990), *cert. denied*, 498 U.S. 874 (1990).   Moreover, in *Romero v. Fay*, which was decided in 1995, the Tenth Circuit clearly established that "the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless

14

arrest and detention."   45 F.3d 1472, 1476-77 (10th Cir. 1995)

Pursuant to this clearly established law, in determining whether a reasonable officer in Defendants' position would have known, based upon the law in effect at the time of Plaintiff's arrest, that arresting and prosecuting Plaintiff for unlawful possession would violate Plaintiff's rights, the Court must examine all of the facts and circumstances known to Defendants at the time of the arrest.   These circumstances were that Plaintiff sought entry into the courthouse, Plaintiff had in his possession one or more metal vials attached to his key chain that contained fourteen pills, that some of the pills in the vial(s) were hydrocodone and that the remaining pills in the vial(s) were various other controlled substances, that Plaintiff's mother left the courthouse with an officer and returned with prescription records for all of the pills in the vial(s), that the prescription record for hydrocodone was dated thirteen or fourteen months earlier, that this date caused Defendants to believe the prescription was not valid, and that the dates on the remaining prescription records were not sufficiently old to cause the Defendants to assume that these records also were invalid.

In support of their contention that a reasonable officer in their position would have concluded that probable cause existed, Defendants argue that "[o]bviously, as a matter of common sense, it seems unlikely that someone who is so reliant on their [sic] medications that they [sic] must keep it in a vial in their [sic] pocket at all times, would fail to consume the thirty (30) day supply of tablets in the more than 420 day period they were in his possession."   [Doc. 86 at 10]. From this "obvious" assumption, Defendants extrapolate that the pills in Plaintiff's possession were not obtained pursuant to the prescription he presented.

The Court concludes that under the law established at that time, a reasonable officer confronted with these circumstances would not have made this so-called "obvious" assumption.

15

Without any evidence to support the theory other than a date on a prescription record of thirteen or fourteen months prior, a reasonable officer would not have assumed that probable cause existed to believe the hydrocodone Plaintiff possessed was from a source other than the prescription. Clearly established law then in effect required an officer to examine all the facts and circumstances within the officer's knowledge and generally "inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention." *Romero*, 45 F.3d at 1476-77. The facts within Defendants' knowledge at the time of Plaintiff's arrest do not reasonably suggest, either individually or in combination, that Plaintiff committed the crime of unlawfully possessing a controlled substance.

Section 30-31-23(A) criminalizes possession of a controlled substance unless the substance was "obtained" pursuant to a valid prescription. *See* N.M. Stat. Ann. § 30-31-23(A). At issue under the statute is how Plaintiff obtained, or came into possession, of the controlled substance. If he obtained the hydrocodone pursuant to a valid prescription, then, under the statute, he was not in unlawful possession of the substance.

Defendants rely solely upon the fact that the prescription for hydrocodone was dated thirteen or fourteen months prior to Plaintiff's arrest to give rise to probable cause to believe Plaintiff either did not obtain the hydrocodone pursuant to the prescription or that the prescription itself was not valid. This evidence alone, however, was not sufficient for a reasonable officer in Defendants' position to conclude that Plaintiff came into possession of the hydrocodone by some unlawful manner other than by obtaining it pursuant to the prescription or that the prescription itself was not valid. Any object in one's possession can be said to have been unlawfully obtained but arrest is proper only if the facts before an officer give rise to probable cause to support that conclusion. Absent facts giving rise to that probable cause, a reasonable officer would not

assume, simply because a certain amount of time has elapsed during which one has possessed the object, that it was unlawfully obtained. Because a receipt produced for an item is old, for example, would not cause a reasonable officer to believe that the item possessed is not the item actually purchased on the receipt but rather is contraband unlawfully obtained from some other source. That Plaintiff presented several other prescriptions covering all of the controlled substances found in his possession and that none of the dates on these prescriptions caused Defendants to believe that the prescriptions were not valid constitutes further evidence that would have led a reasonable officer to conclude that the hydrocodone prescription likewise was valid. Moreover, Defendants have pointed to no authority in New Mexico establishing that a prescription dated thirteen or fourteen months prior to an arrest for possession of a controlled substance is not "valid," as a matter of law, within the meaning of Section 30-31-23(A).

Defendants were required by the law then in effect to examine the totality of the circumstances within their knowledge, *see Carroll*, 267 U.S. at 162; *Morgan*, 936 F.2d at 1569, and to "otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention," *Romero*, 45 F.3d at 1476-77. None of the circumstances before Defendants reasonably suggested that Plaintiff came into possession of the hydrocodone from an illicit source. Thus, no reasonable officer in Defendants' position would have concluded that, based solely upon the date on the prescription, Plaintiff was in unlawful possession of the hydrocodone.

If Defendants believed that the hydrocodone Plaintiff possessed was not the same hydrocodone he obtained thirteen or fourteen months earlier pursuant to the prescription or that the prescription itself was not valid for some reason that could be deemed reasonable (*e.g.*, the prescription was forged or fraudulent), they were not entitled simply to arrest Plaintiff based upon

17

their own unsupported speculation.   Rather, clearly established law in the Tenth Circuit required Defendants first to investigate whether the hydrocodone possessed was not obtained pursuant to the prescription or to investigate whether the prescription was invalid prior to arresting Plaintiff on sheer speculation.

In 1995, the Tenth Circuit held in *Romero v. Fay* that "the Fourth Amendment requires officers reasonably to interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention."   45 F.3d at 1476-77.   In 2007, the Tenth Circuit confirmed in *Cortez v. McCauley* that the Fourth Amendment requires officers to conduct a reasonable investigation of witnesses at the scene and basic evidence prior to invoking the power of warrantless arrest and detention.   *See* 478 F.3d 1108, 1117 (10th Cir. 2007) (citing *Romero*, 45 F.3d at 1476-77).   The *McCauley* court also confirmed that this law was clearly established at the time of its 2007 decision.   *See id*.   Moreover, in *McCauley* and two other cases—*Lusby v. T.G. & Y Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984),[6] and *Baptiste v. J.C. Penny Co.*, 147 F.3d 1252 (10th Cir. 1998)—the Tenth Circuit held that, under similar factual circumstances, an officer violates the Fourth Amendment when he or she ignores readily available exculpatory evidence at the scene.   This clearly established law in effect at the time of Plaintiff's arrest would have placed a reasonable officer in Defendants' position on notice that the officer was required to conduct a basic investigation of the prescription and gather facts suggesting that the hydrocodone Plaintiff possessed was not obtained pursuant to the prescription or that the prescription itself was not valid prior to arresting Plaintiff.   A reasonable officer would have known that the failure to conduct this investigation and that arresting Plaintiff on speculation alone would violate Plaintiff's Fourth

---

[6]   *Reaffirmed by* 796 F.2d 1307 (10th Cir.), *and cert. denied by* 479 U.S. 884 (1986).

Amendment rights.

In *Cortez v. McCauley*, decided in 2007, officers responded to a call from a nurse stating that a woman had brought her two-year-old daughter to the hospital asserting that the child had complained that her babysitter's boyfriend had molested her. *See* 478 F.3d at 1113 (internal quotation marks omitted).   Without interviewing the girl, her mother, the nurse, or the attending physician, without inspecting the girl's clothing for signs of sexual assault, and without waiting for the results of the child's medical examination, the officers arrested the boyfriend. *See id.*  The Tenth Circuit held that, "whether we view it as a need for more pre-arrest investigation because of insufficient information, . . . or inadequate corroboration, what the officers had fell short of reasonably trustworthy information indicating that a crime had been committed by [the defendant]." *Id.* at 1116-17.   Thus, the court concluded that the officers arrested the plaintiff without probable cause in violation of the plaintiff's constitutional rights.   *See id.* at 1117.

The *McCauley* court further held that the officers were not entitled to qualified immunity because the right violated was clearly established when the alleged violation occurred. *See id.* The court cited its 1995 decision in *Romero v. Fay* and held that "it was established law that 'the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention.'" *Id.* (quoting *Romero*, 45 F.3d at 1476-77).   The court explained that "witnesses were readily available for interviews, physical evidence was available, and a medical diagnosis was forthcoming," and therefore that the officers' decision to forego further investigation and instead rely upon the "flimsiest of information conveyed by a telephone call" was unreasonable and violated clearly established law. *Id.* at 1117.

19

In *Lusby v. T.G. & Y Stores, Inc.*, a 1984 decision, the Tenth Circuit considered whether an officer may rely solely on the statements of a witness without conducting an independent investigation to establish probable cause for a warrantless arrest.   *See* 749 F.2d at 1434.   The plaintiff in *Lusby* purchased a pair of sunglasses at a T.G. & Y. Store, and, after leaving, the plaintiff decided to return to the store to buy hair spray.   *See id.* at 1427.   While still carrying the sunglasses, the plaintiff entered the checkout line a second time and paid for the hair spray, and an assistant store manager, who observed the plaintiff go through the checkout line, noted that the plaintiff did not pay for the sunglasses.   *See id.*   The manager therefore contacted an off-duty police officer, employed by the store as a security guard, to investigate.   *See id.* at 1427-28.   When the plaintiff was unable to produce a receipt for the sunglasses, the officer placed the plaintiff under arrest, *see id.* at 1428, without questioning the cashier, despite the plaintiff's claim that he had purchased the sunglasses moments before, *see id.* at 1428, 1432.   The Tenth Circuit rejected the argument that the officer was shielded by qualified immunity and held that "[t]here was sufficient evidence from which the jury could conclude that a reasonable police officer in [the defendant's] position would have known he was violating the [plaintiff's] constitutional . . . rights" by arresting her without questioning the cashier.   *Id.* at 1434.

Finally, in *Baptiste v. J.C. Penny Co.*, a 1998 decision, the Tenth Circuit held that in determining whether probable cause exists, police officers "may not ignore easily accessible evidence" or "*available and undisputed* facts."   147 F.3d at 1259 (emphasis in original) (citations omitted).   The plaintiff in *Baptiste* was shopping at a J.C. Penney store, purchased a sterling silver ring, and, upon exiting the store, was stopped by store security guards.   *See id.* at 1254. Although the guards had been watching the plaintiff on a store monitor and believed she had stolen a ring, the plaintiff emptied the contents of her bag, produced receipts for the items purchased, and

the guards did not find a stolen ring.   *See id.*   The defendant police officers, who had been called to the scene by the guards, spoke with the guards and viewed the security videotape, which showed the plaintiff standing at a jewelry counter, reaching into her shopping bag, pulling out a ring, placing the ring on her finger, trying and comparing various J.C. Penney rings, returning one ring to her bag and, with a second ring in her hand, looking for a sales person, at which point there is then a gap in the recording before the videotape shows the plaintiff making a purchase.   *See id.* The Tenth Circuit held that the facts "known to [the officers], did not provide reasonable grounds to believe the security guards' allegations of theft and did not provide probable cause to arrest [the plaintiff]."   *Id.*   The Tenth Circuit also held that the officers were not entitled to qualified immunity because its decision in *Lusby* was sufficient to place the defendants on notice that their conduct violated the plaintiff's constitutional rights.   *See id.* at 1259-60.   The *Baptiste* court stated, "While the context of *Lusby* differs from the case currently before the court, its message is unequivocal:   police officers may not ignore easily accessible evidence and thereby delegate their duty to investigate and make an independent probable cause determination based on that investigation."   *Id.* at 1259.   The court also noted that clearly established law placed the officers on notice that they were required to "look at the 'totality of the circumstances,'" *id.* (citations omitted), and that they could not ignore "*available and undisputed* facts," *id.* (citations omitted). The *Baptiste* court held that this clearly established law required the officers, in making the probable cause determination based on the totality of the circumstances, to consider the videotape independent of any interpretation by the security guards.   *See id.* at 1259-60.

    The Court holds that *McCauley*, *Lusby*, and *Baptiste* have a sufficient degree of factual correspondence to constitute clearly established law and provide further support for the Court's conclusion that a reasonable officer in Defendants' position would have known that to assume that

Plaintiff obtained the hydrocodone from a source other than the prescription, simply because the prescription was dated thirteen or fourteen months prior, violated Plaintiff's Fourth and Fourteenth Amendment rights.   A reasonable officer would not have arrested Plaintiff based upon this assumption but instead would have known that he or she was required to investigate the basic evidence of the prescription and determine whether Plaintiff in fact had obtained the hydrocodone from a source other than the prescription or whether the prescription itself was invalid.   This is particularly true because the totality of the circumstances shows that, in addition to the hydrocodone prescription record itself, Plaintiff also presented prescriptions that covered the other controlled substances he was carrying in the vial(s) with the hydrocodone.   The fact that Defendants concede these prescriptions were valid and sufficient to establish that Plaintiff lawfully was in possession of these other medications would, for a reasonable officer, have further negated probable cause.

Despite the fact that evidence on the scene negated probable cause, Defendants failed to conduct any investigation prior to arresting Plaintiff.   There is no evidence before the Court on summary judgment, for example, suggesting that Defendants interviewed Plaintiff's mother, who was readily available and on the scene, to inquire how Plaintiff came into possession of the hydrocodone.   Moreover, Defendants did not contact the prescribing physician's office to investigate whether the prescription itself was fraudulent, whether the physician actually prescribed the medication to Plaintiff, or whether Defendants' assumption that Plaintiff would have consumed the pills prescribed over a year prior by the time of his arrest.   Although Defendants contend that any such investigation would have been futile because disclosure of such information would violate the Health Insurance Portability and Accountability Act ("HIPPA"), 42 U.S.C. § 1320d *et seq.*, [Doc. 97 at 4], the Court is not persuaded.   The duty to investigate under

clearly established Tenth Circuit law does not turn on whether the investigation might be impeded by a suspect's statutory privacy rights or the physician-patient privilege.   If the police cannot gather sufficient evidence to establish probable cause, regardless of the reason, then arrest violates the Fourth Amendment.[7]

The Tenth Circuit confirmed in *McCauley* that the failure to interview readily available witnesses on the scene and investigate basic evidence is unreasonable under the Fourth Amendment and that these failures violate clearly established law in the Tenth Circuit.   *See McCauley*, 478 F.3d at 1117.   Likewise, the Tenth Circuit held in *Lusby* that an officer's failure to interview a witness-cashier who could have confirmed or denied whether the plaintiff had paid for a pair of sunglasses she was being accused of stealing violated the Plaintiff's Fourth Amendment rights.   *See* 749 F.2d at 1434.   And, the Tenth Circuit concluded in *Baptiste* that an officer's reliance solely upon security guards' allegations of theft, while ignoring other evidence that negated probable cause, violated the plaintiff's Fourth Amendment rights.   *See* 147 F.3d at 1259. Under this law in effect at the time of Plaintiff's arrest and prosecution, a reasonable officer in Defendants' position would have known that the law required an officer to do more than rely upon one piece of evidence—the date on a prescription—and simply assume from this one piece of evidence that Plaintiff obtained the hydrocodone from a source other than the prescription.[8]   The

---

[7]   The Court also rejects Defendants' argument because it does not believe HIPPA precludes all investigation.   HIPPA, for example, would not have prevented Defendants from investigating whether the prescription itself was authentic or fraudulent or whether a patient might have cause to treat symptoms with hydrocodone so rarely that thirty pills could remain in the patient's possession for more than one year.   Moreover, HIPPA would not preclude Defendants from obtaining a release authorizing Plaintiff's prescribing physician to disclose patient information.

[8]   While Defendants argue that the Court cannot "overlook" that Defendants were enforcing the law in a "busy" Albuquerque courthouse where "[h]undreds of people enter" and many are "emotional and distressed," [Doc. 86 at 11], the Court concludes that this fact does not render

case law would have placed a reasonable officer on notice that the officer was required to consider the totality of the circumstances and to conduct a reasonable investigation before concluding that probable cause existed to believe the hydrocodone was contraband.   The failure to conduct this investigation of basic facts and evidence within Defendants' knowledge at the time of the arrest violated Plaintiff's clearly established constitutional rights.   *Cf. Romero*, 45 F.3d at 1476-77 (the Fourth Amendment requires an officer to investigate "basic evidence" and "inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention).

The Court is not persuaded to hold otherwise by Defendants' argument that Section 30-31-23(A) requires some deadline by which a previously-valid prescription expires and by which a patient in possession of a controlled substance obtained pursuant to that prescription no longer may lawfully possess that controlled substance or present that prescription to establish lawful possession.   Defendants' query, "[W]hat is the standard th[at] officers should apply, how old a prescription would be enough to meet the standard?   What if the prescription were five years old?   Or ten?   At what point does the requirement of a 'valid' prescription lose any meaning at all?"   [Doc. 86 at 10].

Defendants point to no law criminalizing the continued possession of a controlled substance after a certain period of time (here, thirteen or fourteen months) elapses.   While the New Mexico legislature (like any state legislature or the United States Congress) certainly could enact a statute criminalizing the continued possession of a once-lawfully-obtained controlled substance after some period of time elapses, the New Mexico legislature has not chosen to do so.   Defendants decided to solve the problem they perceived existed by importing a six-month deadline

---

Defendants' arrest and prosecution of Plaintiff for the crime of unlawful possession, with no basis for doing so other than a date on a prescription record, reasonable in the absence of any other facts giving rise to probable cause.

into Section 30-31-23(A) from Section 829(b) of the federal Controlled Substances Act. Defendants' decision to read a deadline by which lawful possession expires into Section 30-31-23(A) was not objectively reasonable.

The problem perceived by Defendants to exist was and is one for the New Mexico legislature or the New Mexico courts construing the legislature's intent to identify and resolve.   It is not a problem for an officer to solve on the scene by acting as legislator, imposing whatever deadline the officer happens to deem reasonable, and arresting a suspect (who had no way of knowing what deadline the officer might deem reasonable and impose) for failing to dispose of a prescribed controlled substance by the officer's self-imposed deadline.  Likewise, the problem raised by Defendants is not one for this Court to solve.   The Court's inquiry is confined to whether a reasonable officer in Defendants' position would have imported a deadline into Section 30-31-23(A) and not whether policy reasons support reading an implied deadline into New Mexico's criminal possession statute.   The Court, without hesitation, concludes that no reasonable officer in Defendants' position would decide to act as legislator and import any deadline, whether the six-month deadline set forth in Section 829(b) or any other deadline deemed appropriate by the officer, into Section 30-31-23(A).   Because the Court concludes that a reasonable officer in Defendants' position would not have imported the six-month standard governing the date by which a prescription must be filled set forth in Section 829(b) to establish a deadline by which a patient in possession of a prescribed controlled substance must consume the substance, the Court rejects Defendants' argument that they are entitled to qualified immunity.

Not surprisingly, Defendants maintain that they "acted objectively reasonably under the circumstances in using the six-month standard [set forth in Section 829(b) of the federal Controlled Substances Act] for determining the validity of a prescription, and they are entitled to

qualified immunity herein as a result."   [Doc. 86 at 14].   Although qualified immunity protects officers from mistakes both in interpreting the law and in applying the facts, it does so only when the mistake is reasonable.   *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The New Mexico statute Defendants arrested Plaintiff for violating specifically provides that possession of a controlled substance is unlawful unless it was "obtained pursuant to a valid prescription."   N.M. Stat. Ann. § 30-31-23(A).   This exception has two elements.   First, the controlled substance must have been obtained pursuant to a prescription, and second, the prescription must have been valid.   *See id.*   As the Tenth Circuit observed on appeal, Plaintiff presented the prescription to establish the first element—*i.e.*, to demonstrate that he obtained the hydrocodone pursuant to a prescription and therefore could not be liable for possession.   *See Garcia v. Escalante*, 551 F. App'x 463, 466 (10th Cir. 2014).   Defendants, however, concluded that probable cause existed to believe Plaintiff was liable under Section 30-31-23(A) because he failed to satisfy the second element—*i.e.*, that the prescription was valid.   Defendants do not dispute that Plaintiff at one time possessed hydrocodone while satisfying both the first and second elements of the exception, but Defendants contend that, due to the thirteen or fourteen month lapse of time between Plaintiff's filling of the prescription and his arrest, the once-valid prescription ceased to be valid by the time of his arrest.   In so concluding, Defendants rely upon Section 829(b) of the federal Controlled Substances Act, which provides that prescriptions for a controlled drug such as hydrocodone "may not be filled or refilled more than six months after the date thereof."   21 U.S.C. § 829(b).

Defendants' importation of a six-month deadline into Section 30-31-23(A) of New Mexico's Controlled Substances Act was objectively unreasonable for two reasons.   First, as the Court already has explained, no reasonable officer would act as legislator and arrest a suspect for

failing to comply with a deadline not provided for in the plain language of a criminal statute absent any authority to do so.  Second, no reasonable officer would import a deadline from Section 829(b) in particular to establish under Section 30-31-23(A) the date by which a prescription medication must be consumed after having been filled because Section 829(b) governs the date by which a prescription must be filled and has relevance only to the period of time between when a prescription is issued and filled.

Regarding the Court's first conclusion, the language in Section 30-31-23(A) is unambiguous.  It simply provides that possession of a controlled substance is unlawful "unless obtained pursuant to a" valid prescription.   The plain language of the statute highlights only one discrete time determinative of criminal liability:   the time the prescription was "obtained."   The language does not highlight a continuous period of time that starts when the prescription was obtained, continues for some period of time, and then ends; the language likewise does not indicate that, when this time frame ends, possession once again becomes unlawful.  Thus, there is no indication from the statute's plain language that the New Mexico legislature intended to except from liability only those who obtain a prescription drug lawfully and consume it within a certain period of time while criminalizing the conduct of those who continue to possess the prescription drug after that consumption deadline expires.   In the absence of any such indication, for Defendants to assume that Section 30-31-23(A) required the importation of a deadline was objectively unreasonable.   Rather, a reasonable officer in Defendants' position would have been on notice, based upon the law in effect at the time of the arrest and prosecution, that the importation of Section 829(b)'s six-month deadline, or stated more precisely any deadline at all, as the deadline by which Plaintiff was required to consume the prescription medication he possessed or face criminal liability under Section 30-31-23(A), would violate Plaintiff's rights.

27

That there is no case in the Tenth Circuit or Supreme Court specifically holding that an officer's decision to read a deadline for consumption of a controlled substance obtained pursuant to a prescription into a statute's language, absent ambiguous language in the statute or any other authority indicating that this might be reasonable, does not deter the Court from concluding that the law was clearly established.   The Supreme Court has confirmed that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful."   *U.S. v. Lanier*, 520 U.S. 259, 271 (1997)) (internal quotation marks and citation omitted); *accord McCauley*, 478 F.3d at 1118-19.   The Court does not hesitate to conclude that it would have been patently obvious to any reasonable law enforcement officer that the general constitutional principle that an officer cannot arrest a suspect without probable cause to believe that a crime has been committed requires the officer to know the language of the statute defining the crime for which he or she is conducting the arrest and knowing that the language of that statute cannot be altered to criminalize conduct outside of its scope.   The Court's holding is consistent with the underpinnings of qualified immunity analysis itself, which is premised upon the notion that a "reasonably competent public official should know the law governing his conduct," unless extraordinary circumstances establish that the official did not know and should not have known of the relevant legal standard.   *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) (explaining that "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct," but explaining that "if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained").   Moreover, to hold otherwise would be to create "an ignorance of the law defense,"

which, "especially when the law is clear[,] in the qualified immunity context 'might foster ignorance of the law or, at least, encourage feigned ignorance of the law.'"   *Pritchard v. Hamilton Township Bd. of T'ees*, 424 F. App'x 492, 506 (6th Cir. 2011) (quoting *Painter v. Robertson*, 185 F.3d 557, 571 n.21 (6th Cir. 1999)).   Furthermore, "permitting an officer to be ignorant of the law also would draw a stark contrast with our long tradition of imputing knowledge of criminal statutes to the general public."   *Id.* (citing *Bryan v. U.S.*, 524 U.S. 184, 195 (1998) (noting that the traditional rule is that "ignorance of the law is no excuse" for a defendant's criminal conduct)).

Section 30-31-23(A) is unambiguous and, as the Court already has explained, on its face the Act does not seek to criminalize the continued possession of an otherwise lawfully obtained prescription drug.  *See supra* at 24-25.   Defendants identify no authority, and this Court finds none, that would lead a reasonable officer in Defendants' position to believe that he or she could graft a consumption deadline into the New Mexico Controlled Substances Act or that he or she could arrest someone for a crime of continued possession of a once-lawfully-obtained prescription drug past a certain officer-designated deadline, when that crime is created on the spot, by a law enforcement officer, with no notice to the arrestee.   In the absence of any indication that the New Mexico legislature intended or the New Mexico courts have interpreted Section 30-31-23(A) to criminalize the continued possession of a lawfully-obtained prescription drug past a certain date, the Court has no qualms concluding, under general constitutional principles, that Defendants ran afoul of clearly established Fourth Amendment law when they arrested Plaintiff for a crime that does not exist.

The Court also holds that Defendants' decision to import the six-month deadline by which a prescription must be filled set forth in Section 829(b) violated clearly established law for a second reason.   While arguably Section 829(b)'s prescription fill-by date may be relevant to the

second element of Section 30-31-23(A)'s exception for prescribed drugs, *i.e.*, that the prescription itself must be valid, Section 829(b)'s fill-by deadline has no bearing on the New Mexico Act's first requirement that Plaintiff must have obtained the controlled substance pursuant to a prescription. Yet, Defendants nonetheless imported the prescription fill-by deadline of six months and applied it as the deadline by which Plaintiff was required to consume his prescribed drug or be subject to criminal liability for unlawful possession.

Defendants' decision to import the six-month prescription fill-by deadline in Section 829(b) was unreasonable because there was no evidence before Defendants at the time of the arrest that Plaintiff's prescription was not filled within six months of being issued.  Moreover, that Plaintiff's prescription was dated thirteen or fourteen months prior to the arrest provides no indication of the time that elapsed between when the prescription was prescribed and when it was filled.   Section 829(b) limits the time that elapses between the issuance of a prescription and the filling of a prescription to six months.  At issue here, however, is the period of time that immediately follows that period governed by Section 829(b):  the thirteen- or fourteen-month period from which Plaintiff filled his prescription until he was arrested in possession of the substance prescribed.  For Defendants to assume that a statute setting a deadline for the former period could be utilized to establish a deadline for the latter period was objectively unreasonable. That no case specifically so holds does not give the Court pause, for the Court already has held it was patently unreasonable for Defendants to act as legislators by reading any deadline into Section 30-31-23(A).  That the Court also holds Defendants' decision to import a *clearly inapplicable deadline* into Section 30-31-23(A) only heightens what the Court already has concluded constituted a patently obvious error under general constitutional principles.

The Court also is not persuaded to grant Defendants qualified immunity by their citation to

30

cases from the Fifth Circuit, District of Columbia Circuit, and the District of Maine that stand for the proposition that language similar to that in the New Mexico Controlled Substances Act, which excepts from criminal liability possession of a controlled substance obtained pursuant to a valid prescription, constitutes an affirmative defense instead of an element of the crime.   [Doc. 86 at 12 (citing *Woods v. Butler*, 847 F.2d 1163, 1166-67 (5th Cir.), *cert. denied*, 488 U.S. 970 (1988); *U.S. v. Forbes*, 515 F.2d 676 (D.C. Cir. 1975); *U.S. v. Matthews*, No. 11-CR-0227-JAW, 2012 WL 5389925 (D. Me. Nov. 5, 2012)].   Defendants cite these cases to support their characterization of the clearly established inquiry as presupposing that Defendants had probable cause to arrest and prosecute Plaintiff and then requiring Plaintiff to demonstrate that clearly established law "vitiates" the probable cause that was present.   [*Id.* at 3].   The Court is not persuaded that, pursuant to these cases, the relevant inquiry under the clearly established prong is whether Plaintiff has demonstrated that his prescription vitiates probable cause.   Rather, the inquiry properly before the Court is whether probable cause existed in the first instance to support Defendants' arrest and prosecution of Plaintiff.

While a state's legislature certainly can decree that an exception in a statute constitutes an affirmative defense and a state's judiciary also can construe an exception in a statute as an affirmative defense, Defendants cite no controlling authority holding that an officer's duty to examine all of the facts within the officer's knowledge in formulating probable cause turns on whether the fact is characterized by a state as an affirmative defense or an element of the crime. Moreover, even if this were the law under Tenth Circuit or Supreme Court precedent, it would not apply here because New Mexico has not characterized the language "unless obtained pursuant to a valid prescription" as an affirmative defense.   The Court already has explained that a reasonable officer in Defendants' position would have known, based upon general constitutional principles,

31

the parameters of liability of the statute the officer was enforcing.   This includes knowing whether any language excepting liability has been construed by the New Mexico legislature or courts as an affirmative defense.

Moreover, a reasonable officer in Defendants' position would have known that Tenth Circuit law required the officer, in formulating probable cause, to consider all of the facts and circumstances within the officer's knowledge at the time of the arrest.   *See Carroll v. U.S.*, 267 U.S. 132, 162 (1925); *U.S. v. Morgan*, 936 F.2d 1561, 1569 (10th Cir. 1991), *cert. denied*, 502 U.S. 1102 (1992).   Under this clearly established precedent, a reasonable officer in Defendants' position would have known that he or she could not ignore the prescription simply because the officer concluded, without any support for doing so under the law, that the language "unless obtained pursuant to a valid prescription" set forth in Section 30-31-23(A) constituted an affirmative defense.

Finally, the Court notes that it is not persuaded by Defendants' citation to *Sanchez v. Labate*, 564 F. App'x 371 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 251 (2014), for the proposition that there is "simply no . . . duty to investigate to determine whether probable cause for arrest could be vitiated."   [Doc. 97 at 3-4].   The Tenth Circuit in *Sanchez* considered whether the police have an affirmative duty to "resolve" whether a suspect who admitted to killing a victim did so in self-defense prior to arresting that suspect.   *See Sanchez*, 564 F. App'x at 373.   The plaintiff maintained that the law was clearly established at the time of the arrest that an officer must consider facts establishing an affirmative defense in determining whether probable cause to arrest exists, but the Tenth Circuit noted that the plaintiff pointed to "published decisions with holdings to that effect only from the Second, Sixth, and Seventh Circuits."   *Id.*   The Tenth Circuit "question[ed] whether the law of only three circuits makes that law 'clearly established.'"   *Id.* at

373 (citations omitted).   The court explained that, even if it did, only "two of those circuits held that an affirmative defense to a crime negated probable cause only when the defense was 'conclusively' established."   *Id.* at 373-74 (citations omitted).   Then, applying this standard, the Tenth Circuit reasoned that, "the complaint, although certainly alleging evidence of self-defense, presents a sufficiently ambiguous situation that one could not infer that self-defense was *conclusively* established by the evidence known to the officers."   *Id.* at 374.   The Tenth Circuit further held that New Mexico law did not place the burden on the state during pre-trial proceedings to prove the unlawfulness of a killing when a defendant raises self-defense.   *See id.* Thus, the court concluded that New Mexico law "suggests that the officers had no duty to consider a claim of self-defense in deciding whether they had probable cause to arrest him."   *Id.*   For these reasons, the court affirmed the dismissal of the false arrest claim on the ground that the officers were entitled to qualified immunity.   *See id.*

*Sanchez* does not change the Court's analysis for several reasons.   First, the Court already has held that there is no indication that the language "unless obtained pursuant to a valid prescription" in Section 30-31-23(A) is an affirmative defense.   Second, unlike self-defense, the exception for possession of a prescribed controlled substance is set forth in the very statute criminalizing possession.   Third, the prescription here was readily available at the scene and, in and of itself, the prescription on its face absolved Plaintiff of criminal liability, particularly because Defendants had no facts within their knowledge indicating that the prescription was invalid.   Indeed, the Tenth Circuit on appeal held that the only dispute preventing entry of summary judgment in *Plaintiff's* favor on the constitutional violation of arrest without probable cause is the dispute of fact whether Plaintiff actually provided Defendants with the prescription for hydrocodone.   *See Garcia v. Escalante*, 551 F. App'x 463, 467 (10th Cir. 2014) ("We further note

that because there are disputed facts about what prescriptions were presented by Plaintiff's mother, Plaintiff is not entitled to summary judgment on the validity of his arrest and prosecution."). Thus, the prescription itself on these facts can be said conclusively to establish that Plaintiff was relieved of criminal liability for possession of the hydrocodone in violation of Section 30-31-23(A), whereas in *Sanchez* the suspect admitted to killing the victim and the claim of self-defense was far from clear cut.   In *Sanchez*, "[t]he physical evidence could not establish the sequence of events, which is a critical matter in a claim of self-defense; and a recording of the 911 call would provide only the evidence available to one of the senses, with limited context."   564 F. App'x at 374.   For these reasons, the Court holds that a reasonable officer would have been on notice that the officer could not simply ignore the prescription and arrest and prosecute Plaintiff for unlawful possession of a controlled substance.

Defendants have moved for summary judgment on the ground that they are shielded from Plaintiff's Section 1983 claims by qualified immunity.   Having raised the defense of qualified immunity, Plaintiff was required to assert facts which, if true, establish a constitutional violation and to demonstrate that the rights violated were clearly established.   The Tenth Circuit already has held that Plaintiff satisfied his first burden to overcome qualified immunity.   The Court now also holds that Plaintiff has satisfied his second burden of demonstrating that the law in effect at the time of the events in question was clearly established such that a reasonable officer in Defendants' position would have known that arresting and prosecuting Plaintiff for the crime of possession of a controlled substance violated Plaintiff's constitutional rights.   According, because Plaintiff has satisfied both prongs of the qualified immunity test, he has overcome Defendants' assertion of qualified immunity.   The Court therefore denies Defendants' Motion for Summary Judgment.

34

II.     The Court Denies as Moot the Motion to Defer Ruling.

In his Motion to Defer Ruling, Plaintiff requests, pursuant to Federal Rule of Civil Procedure 56(d), that the Court enter an order deferring ruling on the Motion for Summary Judgment to allow Plaintiff time to depose Garcia.   [Doc. 90 at 1].   Alternatively, Plaintiff asks the Court summarily to deny Defendants' Motion for Summary Judgment.   [*Id.* at 8].

The Court already has denied Defendants' Motion for Summary Judgment on the dispositive ground that the unlawfulness of Defendants' arrest and prosecution of Plaintiff was "clearly established at the time such that a reasonable person in [Defendants'] position would have known that [the] conduct violated [Plaintiff's] right[s]."   *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted).   Thus, Plaintiff's Motion to Defer Ruling is moot.   The Court therefore denies the motion as moot.

## CONCLUSION

**IT THEREFORE IS ORDERED** that Defendants' Renewed Motion for Summary Judgment and Qualified Immunity and Memorandum in Support Thereof, filed April 17, 2014 [Doc. 86], is hereby **DENIED**.

**IT FURTHER IS ORDERED** that Plaintiff's Motion to Defer Ruling on or Deny Defendants' Summary Judgment Motion [Doc. 86] Under Federal Rule of Civil Procedure 56(d), filed April 30, 2014 [Doc. 90], is hereby **DENIED** as moot.

**SO ORDERED** this 27th day of March, 2015.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

35